SAMUEL D. REED, *Complainant, versus* MARY ELWELL & *al.,* *Appellants.*

To make effectual a notice by an *assignee* of a mortgage of real estate, of his claim to foreclose the same, by publication in a newspaper, as provided by statute, it must appear that, at the time of such proceeding to foreclose, the assignment to him of the mortgage had been recorded, or the person entitled to redeem had actual notice that he was assignee; otherwise, the mortgage will not be foreclosed, at the expiration of three years from the time of publication.

And, where the assignment had not been recorded until long after the publication of such notice, whether the time for redemption will expire in three years from the time of recording the assignment, *quære.*

The process of forcible entry and detainer, as provided by c. 94, of R. S. of 1857, does not seem to be adapted to a case where the relation of mortgager and mortgagee exists; for the person in possession, with right to redeem, should not be regarded as a disseizor, within the true sense of the statute.

REPORTED by CUTTING, J.

THIS was a process of FORCIBLE ENTRY AND DETAINER, commenced before a justice of the peace and of the quorum, who rendered judgment for the complainant. The respondents entered in this Court their appeal from said judgment, at the August term, 1857, for the county of Sagadahoc.

At the trial, the complainant read in evidence a deed of mortgage, from Timothy Batchelder to Samuel Swanton, 2d, which was dated May 8, 1850, and recorded on the 8th of October following. Also, an assignment of the same by said Swanton to the complainant, dated December 7, 1852, and recorded on the 16th of January, 1856. Also, the notice of complainant of his claim to foreclose the mortgage, published in a newspaper in the months of April and May, 1853.

*Christopher Small,* for complainant, testified that he went with Reed upon the premises, on the 16th of November, 1856, and took possession of the house and farm, which were then unoccupied. Reed desired him to see to the place, and, if any thing happened, to inform him.

On the 8th day of April, 1857, was at Bath, and Reed informed him that Catlin was to occupy the premises, and that

he should send him down to Phippsburg, with his furniture, during that day. Catlin went down on that day, with his goods, and put them into the house late in the evening.

The next morning, respondents came and removed his things from the house into the highway.

The report of the case contains the testimony of other witnesses on the part of the complainant.

*In defence.* — The deed of Timothy Batchelder to S. H. Osgood was read, a quitclaim of all his right, title and interest, embracing the house, dated and recorded September 6, 1850. Also, a like deed from William M. Reed to Mary Elwell, dated December 6, 1850, recorded January 7, 1853. Also, quitclaim deed of the pasture from Batchelder to him, (Reed,) dated November 28, 1850. Also, deed from said Osgood to Mary Elwell, September 29, 1854.

Several witnesses were called and examined for the respondents.

The cause was then withdrawn from the jury, and submitted to the full Court, on Report of the presiding Judge.

*C. R. Porter,* for the complainant, argued: —

1. The title of complainant, originally that of assignee of mortgagee, was made absolute by foreclosure and the expiration of the three years, in April or May, 1856. The assignment was recorded in January, 1856; this was several months before the expiration of the three years, and gave ample time and notice for redeeming. *Wing* v. *Davis,* 7 Greenl. 31.

2. The title of Mary Elwell was not adverse to complainant, — hers being only by quitclaim of all right, title and interest. She, in fact, was but the assignee of the mortgager, Batchelder, and had no higher or superior right than he had, prior to his conveyance to Osgood and subsequent to his mortgage to Swanton. *Coe* v. *persons unknown,* 43 Maine, 432; *Blaney* v. *Bearce,* 2 Greenl. 132; *Miner* v. *Stevens,* 1 Cush. 482.

3. The mortgager or his assignee, being a mere tenant at will to the mortgagee or his assignee, the entry of Reed, in

November, 1856, after the expiration of the right to redeem, and giving Small the care of the premises, was an entire extinction of all right in Mary Elwell, and any entry of hers subsequent thereto was a trespass, or a disseizin, at the election of Reed.

4. Reed had a perfect and indisputable right to place Catlin in possession; and having done so, in 1857, the expulsion of Catlin, the servant of Reed, was the expulsion of Reed in law, and, being done in a violent and threatening manner, the process of forcible entry and detainer was open to Reed. *Benedict* v. *Hart,* 1 Cush. 487; Statute of 1850, c. 160, also statute 1849.

*Bronson & Sewall,* for the respondents.

This process does not lie. When the complaint was filed, the mortgage was not foreclosed in such a manner as to cut off the defendant's right of redemption, which she acquired by the deed of Osgood to her, dated September 6, 1850, and recorded same day.

The notice of foreclosure was published in April and May, 1853, and, though it appears to be after the assignment from Swanton to plaintiff, yet it was before the assignment was recorded.

Now, defendants contend that, though the assignment was dated and made before the notice, yet it was not made public by being put on the record, where the law requires it to be placed. Third persons, therefore, ought not to be affected by such a notice. The record title was still in Swanton, and the record disclosed no assignment.

The construction of the statute should be a liberal one, and such as not to entrap parties, and to give a fair opportunity for persons having a right to redeem.

Swanton was not obliged to tell to whom he had assigned the mortgage, if he had been applied to; and, so far as the notice of foreclosure having any effect under such circumstances, it might have been as well made by any other person.

It will be noticed that this was not put on record until just before the time of redemption expired; to wit, in Jan. 1856.

It is further contended that, if the title by the records did not appear to be in the plaintiff, then the putting the assignment on record, at a time so long subsequent, cannot make that a good notice which was deficient at the time of making it.

A mortgagee or assignee, at the time of giving the notice, must have his record title perfected, in the same manner required to obtain judgment in a contested suit on a mortgage. The assignee cannot, in an action in his own name, read the assignment until after it is recorded, and recording is, therefore, one of the necessary steps to show his title and obtain judgment.

Now, the time within which the mortgager, or one holding under him, may redeem, in the one case, is three years from the taking possession under the judgment, and, in the other, three years from the publication of the notice.

The opinion of the Court was drawn up by

MAY, J.—The complainant claims title as the assignee of a mortgage, dated May 8th, 1850, but not recorded until October 8, of that year, which he contends was absolutely foreclosed, prior to the forcible ejection of his servant from the premises on the 9th day of April, 1857. The assignment is in due form and dated December 7th, 1852, but it was not recorded until January 16th, 1856. Timothy Batchelder, the original mortgager, appears to have conveyed, by his deed of quitclaim, dated September 6th, 1850, all his right, title and interest in the premises, to Stephen H. Osgood, who, by a like deed, on September 29, 1854, conveyed to Mary Elwell, one of the defendants. Such a deed passes only the equity of redemption. *Coe* v. *persons unknown,* 43 Maine, 432.

The said Batchelder also gave a similar deed, dated Nov. 28th, 1850, of the pasture lot, a part of said premises, to William M. Reed, who conveyed the same to Mary Elwell, by his deed of quitclaim, dated December 6th, 1850. By these conveyances the said Mary Elwell became seized of the entire equity of redemption which the said Batchelder had in

the premises, after the making of the mortgage under which the complainant claims.

The other defendant, who is the son of Mary Elwell, justifies under her title and as her servant. If the mortgage had not been foreclosed at the time of the complainant's entry by his servant, which appears to have been on the 8th day of April, 1857, and his subsequent ouster by the defendants immediately thereafter, then the relation of the parties to each other, in this proceeding, is that of mortgagee and mortgager, and their legal rights must be such as necessarily attach to that relation.

The only foreclosure relied upon, by the counsel for the complainant, is that provided for in the first mode of the R. S. of 1841, c. 125, § 5, by which, after condition broken, the mortgagee, or any person claiming under him, not desirous of taking and holding possession of the premises, may give public notice, in a newspaper printed in the county where the premises are situated, three weeks successively, of his claim by mortgage on such real estate, describing such premises intelligibly and naming the date of the mortgage, and that the condition in the same has been broken, by reason whereof he claims a foreclosure; and cause a copy of such printed notice, and the name and date of the newspaper in which it was last published, to be recorded in each registry of deeds in which the mortgage deed is, or by law ought to be recorded, within thirty days after such last publication.

It is contended in defence that, notwithstanding all these requirements have been strictly complied with, still, inasmuch as it is the purpose of the statute to give the party entitled to redeem three full years notice of such claim to foreclose, before his estate in the premises shall be forfeited, no foreclosure can be perfected in this mode, unless it also appear, from the registry of the assignment of the mortgage, that the person claiming under such mortgage held the record title at the time of the publication of his notice to foreclose. The argument that any claim of title under the mortgage, and of a right to foreclose it, when made by a person having no

record title thereto, may be disregarded by the party entitled to redeem, is one of great weight. No reason is perceived why such party should be called upon to act or forfeit his estate, without reasonable or legal evidence that the party claiming to foreclose is the owner of the mortgage, or has authority to receive the money due upon it. A mere claim of owner-ship, without any evidence that the party claiming has the possession of the mortgage, or an assignment of it, by record or otherwise, affords no sufficient basis of title to lay a found-ation of a forfeiture of real estate. A mere newspaper claim cannot be evidence of title unless made so by statute.

It may be said, however, that the language of the statute, under which a foreclosure is claimed to have been perfected, fairly indicates that the Legislature intended that such a claim, without any record or other notice of title in the claimant than that which such claim implies, should be sufficient, when accompanied by the other things required by the statute, to create a foreclosure.

Such is, undoubtedly, the literal construction of the statute. But when we take into consideration, in connection with this statute, the provision of the Revised Statutes of 1841, c. 91, § 26, by which it was provided that "no conveyance of any estate in fee simple, fee tail, or for life, and no lease for more than seven years from the making thereof, shall be good and effectual against any person other than the grantor, his heirs and devisees, and persons having actual notice thereof, unless it is made by a deed recorded" as is required by that chapter, we have no doubt that the provisions of the statute relating to the foreclosure of mortgages, before cited, were intended to apply only to cases where the party holding the mortgage, and claiming to foreclose, is able to show his ownership of the same and notice thereof to the party holding the equity of redemption, at the time of the publication of his claim to foreclose, which notice, however, must be co-existent with such publication, but may be either actual or by the record; and in no case can the three years time, which must elapse before the foreclosure can become absolute, commence running,

until it appears that the party entitled to redeem, or some one under whom he claims, had notice, in one of the modes above stated, of the title being in the party claiming to foreclose. Such a construction is not inconsistent with the language of the statute. That provision which requires the mortgagee, or person claiming under him, to state in his notice that he claims by mortgage, cannot be for the purpose of furnishing evidence to the party entitled to redeem that he holds the mortgage, because it is alike required, whether the title be in the mortgagee or his assignee, and whether the instrument of title be on record or not. If upon the record, this is notice as to the title to every body; and if not, the mere statement of a claim of title in the notice is neither reasonable, nor legal evidence of any such fact. The mortgage itself is actual notice to the mortgager, or his assignee, that the title is in the mortgagee, unless the record or some other evidence shows that it has been legally assigned. In the absence of any such evidence, the mortgager, or person claiming under him, may properly act upon the assumption that the title is in the mortgagee, and may disregard all claims of any other person claiming to foreclose. *Mitchell, in equity,* v. *Burnham,* 44 Maine, 286. It will be seen, also, that the construction we adopt will make the words in the statute, requiring the notice of foreclosure " to be recorded in each registry of deeds in which the mortgage deed is, or by law ought to be recorded," both necessary and proper, without regarding them as expressive of a legislative intention that such notice should be effectual to foreclose the mortgage, whether the party entitled to redeem had the necessary notice of title in the person claiming to foreclose, or not. The fact that actual notice of title in such person is sufficient, without its being recorded, shows why reference was made to the registry in which the mortgage deed ought to be recorded. This provision was intended to show that such notice should, as in other cases, be regarded as equivalent to a notice from the record itself. The construction arrived at is in harmony with the principles of natural justice, which require reason-

able notice before one's rights shall, by reason of the acts of others, be either forfeited or lost.

It appearing, in the case before us, that the assignment of the mortgage, under which the complainant claims title in the premises, was not recorded until January 16, 1856, nearly three years after the publication of his notice to foreclose, and there being no evidence in the case tending to show that the defendant, Mary Elwell, had any notice of such assignment, prior to its registry, we are brought to the conclusion that the mortgage was not in fact absolutely forclosed, if it now is,* of which we give no opinion, until long after the night of April 8th, 1857, when the complainant entered by his servant, whose entry was resisted by the defendants, as soon as they had notice of it, upon the following morning. The rights of the parties, therefore, at this time, were clearly those which are incident to the relations of mortgagee and mortgager, after condition broken.

By the statute of 1841, under which these proceedings were had, c. 125, § 2, it is provided that any mortgagee, or person claiming under him, may enter on the premises, or recover possession thereof, before any breach of the condition of the mortgage, when there is no agreement to the contrary; but, by sections 3, 4, and 5, of the same chapter, after condition broken, several different modes of proceeding are provided for the purpose of a foreclosure, any one of which may be adopted by the mortgagee, or party claiming under him, at his election. Among these modes, however, no provision is made for that of a clandestine entry. To effect a foreclosure by means of an entry, such entry must be with the consent, in writing, of the mortgager, or person claiming under him, or it must be unopposed, peaceable, and open, in the presence of two witnesses. But the entry in this case was not made for the purpose of foreclosure. Nor does it appear to have been made under the authority of section two in the statute before cited, with a view to account for the rents and profits

* This opinion was delivered, A. D. 1860.

in case the mortgage should be paid and the estate redeemed. It was an entry upon the premises when the defendant, Mary Elwell, was in possession, as mortgager, occupying the barn with her hay cut upon the premises, and the house had been occupied by her with her family, although, at the time of the entry, she was temporarily absent therefrom. It also appears that the complainant, on the 17th day of November, 1856, went with a witness into the western room of the house, (the house being then unoccupied,) and there said that he took possession of the house and farm, but he did not retain actual possession, but went away, requesting the witness to see to the place, and if any thing happened, to let him know it. Neither of these entries appear to be of the character contemplated by the statute in any of its provisions. The possession of the complainant was at no time exclusive. The mortgager's grantee still continued in the occupancy of some portion of the premises. Such an entry as either which has been shown is not deemed sufficient evidence of possession, as between mortgagee and mortgager, to sustain a complaint for forcible entry and detainer, as against parties in possession claiming under the mortgager, when it appears that the only acts of ouster consist in the expulsion of the mortgagee, or his servant, from the joint occupation of the premises with themselves, or from a separate occupation of any particular part, less than the whole.

This process does not appear to be adapted to the relation subsisting between mortgagee and mortgager. It cuts off the latter from the benefit of the conditional judgment, provided in cases of mortgages after condition broken, in actions for possession by a writ of entry. R. S. of 1841, c. 125, § 7. The remedy does not seem to be provided for such cases, by the R. S. of 1857, c. 94, § 1. By that statute, it is only against a disseizor, who has not acquired any claim by possession and improvement, and against a tenant holding under a lease or contract, or person holding under such tenant, at the expiration or forfeiture of the term, if the process is commenced within seven days from the expiration or forfeiture of

Reed *v.* Elwell.

the term; and against a tenant at will, whose tenancy has been terminated in the manner provided in the second section of the statute.

This statute was intended to combine, and does combine in one section, all the cases provided for in the R. S. of 1841, c. 128, and the statute of 1850, c. 160, and of 1853, c. 39, § 1, as they were in force at the time of its enactment. With the exception of the provision in the statute of 1850, and of the present statute relating to disseizors, our statutes will be found to be somewhat similar to the revised statutes of Massachusetts, c. 104.

In the case of *Hastings* v. *Pratt*, 8 Cush. 121, it is said by SHAW, C. J., that "although, in a loose sense, a mortgager in possession is said to be tenant at will of the mortgagee, yet he is not within the reason or the letter of the R. S., c. 104, § 2. He is not lessee, or holding under a lessee, or holding demised premises without right after the determination of the lease. The remedies of a mortgagee are altogether of a different character, clearly marked out by law."

Nor does the provision in our statutes, providing this summary process against a disseizor, who has not been in possession of the premises long enough to be entitled to betterments, apply to the case of a mortgager in possession, who has prevented the mortgagee from taking actual possession, or excluded him after possession taken. The disseizin contemplated by this statute, is not a disseizin which exists only at the election of a party, for the purpose of trying his title, but a disseizin at the common law, which cannot exist as between mortgagee and mortgager, so long as the debt secured by the mortgage remains unpaid. *Noyes* v. *Sturtivant*, 18 Maine, 104; *Sweetser* v. *Lowell & al.*, 33 Maine, 446.

The result is that, in view of all the facts in this case, this process cannot be maintained against these defendants, and the complainant must seek his remedy for the acts complained of in some other mode.

*Complaint dismissed, with costs for defendants.*

TENNEY, C. J., and RICE, CUTTING, and GOODENOW, J. J., concurred.